IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 21-cv-3445-WJM-STV

KATHLEEN WALLACE,

    Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, an Illinois corporation,

    Defendant.

---

**ORDER GRANTING DEFENDANT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**

---

Before the Court is Defendant State Farm Mutual Automobile Insurance Company's ("State Farm") Motion for Partial Summary Judgment on Plaintiff's Second and Third Claims for Relief ("Motion"). (ECF No. 28.) Plaintiff Kathleen Wallace filed a response. (ECF No. 29.) Defendant filed a reply. (ECF No. 31-1.) For the following reasons, the Motion is granted.

**I. STANDARD OF REVIEW**

Summary judgment is warranted under Federal Rule of Civil Procedure 56 "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986). A fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001). An issue is "genuine" if

the evidence is such that it might lead a reasonable trier of fact to return a verdict for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

In analyzing a motion for summary judgment, a court must view the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  In addition, the Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial.  *See Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

## II. MATERIAL FACTS[1]

On December 22, 2017, a vehicle operated by Amy L. Silguero struck Wallace as she was walking in the City Market parking lot.  Wallace agrees that the side mirror struck her but also states that she was "dragged by the car as her purse had become entangled with the . . . mirror."  (ECF No. 29 at 1 ¶ 2.)  The same day, Wallace reported to police that she had a very small cut on her wrist and her left side was a little sore, but she was not very injured.  However, Wallace states that these were not the only injuries she suffered and denies that the police officer included all of her statements at the scene.  (ECF No. 29 at 2 ¶ 3.)  State Farm states that Wallace "never reported" being dragged by the vehicle to the police, did not make this allegation in her Complaint, and did not state that she was dragged by Silguero's car at her deposition.  (ECF No. 31-1 at 1 ¶ 2.)

---

[1] The following factual summary is based on the parties' briefs on the Motion and documents submitted in support thereof.  These facts are undisputed unless attributed to a party or source.  All citations to docketed materials are to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination.

Amy L. Silguero had an insurance policy with Allstate that carried $25,000 in bodily injury liability coverage. On April 22, 2021, State Farm consented to a settlement agreement between Wallace and Allstate for the liability policy limits of $25,000. Although Wallace alleged in the Complaint that she had $100,000 of underinsured motorist ("UIM") coverage, State Farm later found additional insurance coverage available to her and agrees that there is $200,000 in available UIM coverage.

On July 14, 2021, Wallace demanded payment of the maximum UIM policy limits available from State Farm. On July 20, 2021, State Farm advised Wallace that it had questions regarding the injuries and treatment being claimed by Wallace and, therefore, it had requested prior records from the list of providers identified by Wallace and it was still waiting for those records. On August 23, 2021, State Farm informed Wallace that it had reviewed prior records along with all other information received to date and determined the value of the claim to be within the $25,000 that she already received from the liability insurer and, therefore, no UIM benefits were owed. (ECF No. 30-2.)

State Farm did not conduct an examination under oath of Wallace as part of its investigation, nor did it conduct an independent medical examination of Wallace before this lawsuit was filed. After the lawsuit was filed, State Farm requested an independent medical examination of Wallace, which was conducted by Dr. Rebekah Martin. (ECF No. 30-7.)

On September 14, 2021, Wallace asked State Farm to reconsider its determination that no UIM benefits were owed. Along with this request, Wallace submitted a spreadsheet of her claimed medical bills in the amount of $29,236.73.

On October 1, 2021, State Farm advised Wallace that it had received $37,745.57

3

in medical bills but it only considered $14,574.79 of those bills to be for accident-related treatment.  (ECF No. 30-3.)  On October 13, 2021, Wallace asked State Farm to identify by provider and date the specific treatment that State Farm included and excluded in its evaluation.  State Farm states that it provided Wallace with an itemization of the medical providers, dates of treatment, total bills received from each provider and total bills considered of each provider on October 29, 2021, but Wallace states that neither she nor her attorney received the correspondence.  (ECF No. 28 at 3 ¶ 13; ECF No. 29 at 2 ¶ 13; ECF No. 30-4.)

On December 23, 2021, Wallace filed this lawsuit, bringing claims against State Farm for breach of insurance contract, violation of Colorado Revised Statutes § 10-3-1116, and bad faith breach of insurance contract.  (ECF No. 1.)

## III. COLORADO LAW CONCERNING BAD FAITH INSURANCE CLAIMS

Colorado law provides for two types of bad faith claims arising out of an alleged breach of an insurance contract: (1) common law bad faith and (2) statutory bad faith. *Dowgiallo v. Allstate Ins. Co.*, 2020 WL 1890668, at *2 (D. Colo. Apr. 16, 2020).  The two claims are similar but nevertheless distinct.  "[B]oth common law and statutory bad faith claims require a showing of unreasonable conduct."  *McKinney v. State Farm Mut. Auto. Ins. Co.*, 2021 WL 4472921, at *4 (D. Colo. Sept. 30, 2021).  A statutory bad faith claim primarily concerns whether an insurer denied or delayed the payment of insurance benefits without a reasonable basis.  *State Farm Mut. Auto. Ins. Co. v. Fisher*, 418 P.3d 501, 506 (Colo. 2018).  To succeed on a claim of unreasonable delay or denial, an insured must establish that (1) the insurer delayed or denied payment of benefits to the insured, and (2) the delay or denial was without a reasonable basis.  *Am.*

4

*Family Mut. Ins. Co. v. Barriga*, 418 P.3d 1181, 1185–86 (Colo. 2018).

In addition to an insurer's statutory duties, an insurer has a simultaneous common law duty to deal in good faith with its insured. *Am. Family Mut. Ins. Co. v. Allen*, 102 P.3d 333, 342 (Colo. 2004). "Due to the 'special nature of the insurance contract and the relationship which exists between the insurer and the insured,' an insurer's breach of the duty of good faith and fair dealing gives rise to a separate cause of action arising in tort." *Goodson v. Am. Standard Ins. Co.*, 89 P.3d 409, 414 (Colo. 2004) (quoting *Cary v. United of Omaha Life Ins. Co.*, 68 P.3d 462, 466 (Colo. 2003)). "The requirements of a common law bad faith claim under Colorado law are heightened in comparison to those of a statutory bad faith claim." *Butman Fam. Inv. Ltd. P'ship v. Owners Ins. Co.*, 2020 WL 1470801, at *8 (D. Colo. Mar. 25, 2020). In addition to demonstrating that the insurer delayed or denied the payment of benefits without a reasonable basis, "a common law insurance bad faith claim requires the insured to [prove] . . . that the insurer knowingly or recklessly disregarded the validity of the insured's claim." *Id*. (quoting *Fisher v. State Farm Mut. Auto. Ins. Co.*, 419 P.3d 985, 990 (Colo. App. 2015)).

"What constitutes reasonableness under the circumstances is ordinarily a question of fact for the jury." *Vaccaro v. Am. Family Ins. Grp.*, 275 P.3d 750, 759 (Colo. App. 2012); *Zolman v. Pinnacol Assurance*, 261 P.3d 490, 497 (Colo. App. 2011). But "in appropriate circumstances, as when there are no genuine issues of material fact, reasonableness may be decided as a matter of law." *Id*. "The reasonableness of the insurer's conduct is determined objectively and is 'based on proof of industry standards.'" *Schultz v. GEICO Cas. Co.*, 429 P.3d 844, 847 (Colo. 2018) (quoting

*Goodson v. Am. Standard Ins. Co. of Wis.*, 89 P.3d 409, 415 (Colo. 2004)); *Bankr. Estate of Morris v. COPIC Ins. Co.*, 192 P.3d 519, 523 (Colo. App. 2008) ("[T]he question is whether a reasonable insurer under the circumstances would have denied or delayed payment of the claim.").

## IV. ANALYSIS

State Farm moves for summary judgment on Wallace's claims for common law and statutory bad faith breach. (*See* ECF No. 28.) For support, State Farm argues that Wallace "alleges, in conclusory statements, that Defendant unreasonably delayed and denied her claim" and "that Defendant acted unreasonably in its handling of her claim for UIM benefits and that it knew that its conduct was unreasonable or that it recklessly disregarded the fact that its conduct was unreasonable." (ECF No. 28 at 5.) Because the arguments attacking the factual sufficiency of Wallace's allegations should have been raised earlier, and because the Court is not persuaded that any purported deficiencies in the *Complaint* is a sufficient basis to enter judgment in favor of State Farm, the Court declines to address this argument further.

State Farm's subsequent arguments fare much better. State Farm argues that the "chronology of events" as reflected in paragraphs 1–14 of its Statement of Undisputed Material Facts "establishes that Defendant timely investigated and evaluated Plaintiff's claim for UIM benefits." (ECF No. 28 at 6.) State Farm asserts that Wallace's common law claim is based on a "mere disagreement" between the parties with respect to the valuation of the UIM claim, which cannot serve as the basis of a bad faith claim. (*Id.*)

According to State Farm, Wallace's medical records obtained in discovery and

from Wallace demonstrate that she had "complaints of frequent neck pain, numbness or pain in arms/legs/hands and lower back problems in 2012, and "[t]he pre-accident medical records also referred to lumbar/sacral spinal injections in 2005 and 2010." (*Id.*)

With respect to the incident at issue, State Farm recounts that a witness reported that the side view mirror of Silguero's vehicle struck Wallace's left side but did not knock her to the ground. (*Id.* at 7.) Wallace reported to the police that she had a "very small cut on her wrist and her left side was a little sore but she was not very injured." (*Id.*) Notably, State Farm explains that Wallace's first medical treatment after the accident was not until a month later, on January 22, 2018. (*Id.*) She complained of pain above her left breast and the right side of her neck, and a couple of weeks later, she started physical therapy. (*Id.*) Additional treatment and scans that Wallace underwent included:

> On April 20, 2018, x-rays were taken of the cervical spine and showed moderate degenerative disc disease, but no acute findings. A head CT was performed on August 9, 2018 and it was unremarkable. A CT of the neck was also performed on August 9, 2018 and it showed degenerative changes, but no acute osseous injury. The same was true for a CT of the thoracic spine done that same day. On October 20, 2018, an MRI of the brain was performed and it was normal.

(*Id.*) In November 2018, Wallace began a second physical therapy program with a different provider to treat her complaints of neck pain, facial muscle weakness, and hoarseness with cervical inflexion. (*Id.* at 7–8.) On January 23, 2019, x-rays of the cervical spine were performed and showed multilevel degenerative changes. (*Id.* at 8.)

Wallace was discharged from physical therapy on March 1, 2019. (*Id.*) On September 23, 2019, Plaintiff was evaluated for complaints of right arm discomfort and

7

decreased sensation of her right face.  (*Id.*)  EMG testing was performed and suggested mild right-sided median neuropathy at the wrist and evidence of chronic right-sided C5 radiculopathy.  (*Id.*)  Wallace did not receive any accident-related medical treatment after 2019.  Based on these medical records and the correspondence detailed above, *supra* Part II, State Farm argues that Wallace's bad faith claims rely on nothing more than "her belief that she should have been paid UIM benefits above the $25,000 that she received from the liability insurer."  (*Id.* at 8.)

In response, Wallace raises four arguments which, for the following reasons, the Court finds do not raise a genuine issue of material fact sufficient to withstand the Motion.  First, Wallace argues that a jury could conclude that State Farm did not have a reasonable basis for its decision not to pay any UIM benefits based on the information available to it because she submitted over 1,000 pages of medical records documenting her injuries.  (ECF No. 29 at 5–8.)  She asserts that the medical records demonstrate that as a result of being "struck and dragged by the underinsured driver she had undergone treatment with over a dozen medical providers in nine treatment facilities," had undergone "multiple diagnostic and other tests," was in "daily pain from multiple injuries," had decreased physical mobility, and was diagnosed with cervicalgia, facial paresthesia, difficulties with speech, and impaired right shoulder strength, among other conditions.  (*Id.* at 6–7.)  Wallace asserts that State Farm arrived at its "outrageous and unreasonable valuation by cutting her medical bills in half and only valuing [her] pain and suffering at somewhere between $5,000.00 and $9,000.00."  (*Id.* at 7.)

With respect to Wallace's argument regarding her medical bills, it is just that—attorney argument.  She argues that State Farm should have valued her claim higher

8

than zero based on voluminous bills, but she does not show evidence of unreasonableness. She cites no case law at all, much less case law supporting her argument that the mere submission of numerous bills and the insurer's rejection of some or all of them amounts to unreasonableness as a matter of law.

As State Farm states, "simply because Plaintiff treated with multiple different providers and was diagnosed with various different injuries . . . did not require Defendant to relate all the treatment and claimed injuries to the accident." (ECF No. 31-1 at 5.) State Farm correctly observes that it was entitled to consider all information presented, including the facts of the accident and all information in Wallace's pre- and post-accident medical records. (*Id.*)

Wallace does not dispute that the summary judgment briefing is the first time State Farm became aware that Wallace alleges that she was dragged by Silguero's vehicle. She also does not dispute the fact that she did not seek medical treatment for at least one month after the accident, on January 22, 2018. Additionally, State Farm explains that at the time it evaluated Wallace's claim, the information available to it was that "the impact was not even forceful enough to knock Plaintiff to the ground," and that Wallace reported to police "at the scene of the accident that she only had a very small cut on her wrist and her left side was a little sore but she was not very injured." (*Id.*) In its reply, State Farm explains that it considered Wallace's medical records and that the findings were unremarkable, degenerative, and relatively minor. (*Id.* at 5–6 (explaining evaluation of medical records).)

State Farm also based its conclusions on Dr. Martin's review of Wallace's medical records and physical exam of her. (*Id.* at 6.) Dr. Martin states in her report that

9

"the patient's subjective complaints, which increased and worsened over time, are not supported by objective findings" and that "it is very unusual that the patient would develop additional subjective complaints over time and have no improvement across multiple types of treatment." (*Id.* at 18.)  In fact, Dr. Martin reports that given the nature of the incident that occurred, she would have expected Wallace to have resolution of her symptoms within three months, particularly given the physical therapy she underwent.  (*Id.*)  Wallace points to no evidence demonstrating it was unreasonable for State Farm to rely on its review of the medical records based on its understanding of what happened at the scene of the accident, as well as Dr. Martin's review of the records and Wallace herself.  While Wallace may disagree with Dr. Martin's—and ultimately State Farm's—assessment of her injuries due to the accident, she provides no evidence that State Farm lacked a reasonable basis for its evaluation of her claim.

Second, Wallace argues that State Farm unreasonably failed to value items of compensable damages.  (ECF No. 29 at 8.)  She makes much of the fact that State Farm did not break out damages for inconvenience, loss of enjoyment of life, and mental stress.  (*Id.* at 8–9.)  However, she acknowledges that State Farm valued Wallace's "Pain/Suffering."  (*Id.*)

Wallace cites no case law demonstrating that it is unreasonable as a matter of law—or even required as a matter of law—that an insurer break down pain and suffering damages into the categories she prefers.  (*See generally id.*)  State Farm states in its reply that damages for pain and suffering encompass all subcategories Wallace lists.  (ECF No. 31-1 at 6.)  It points out that not even the *jury* is required to break down separate damages for each of those subcategories; instead, the jury must

10

only award non-economic damages, which is what State Farm did by valuing those damages at $5,000–9,000.  (*Id.*)  Because Wallace has presented no evidence that State Farm valued her inconvenience, loss of enjoyment of life, and mental stress at zero, she has failed to show a genuine dispute of material fact on this point.

Third, Wallace argues that a jury could find that State Farm acted unreasonably due to the manner in which it investigated her claim.  (ECF No. 29 at 9.)  She specifically takes issue with the requirement that she sign "blanket releases for all of her medical records, even one's [sic] that would have nothing to do with the areas of her body that were not part of the UIM claim despite the fact that Plaintiff had provided over one thousand pages of medical records."  (*Id.*)

Despite Wallace's arguments, the Court finds that not only has Wallace failed to point to evidence showing that requiring her to sign a medical authorization could be construed as unreasonable, the insurance policy she signed with State Farm demonstrates that she was contractually required to do so.  Wallace's insurance policy provides that "a ***person*** making a claim under . . . medical payments coverage, uninsured motor vehicle coverage . . . must . . . provide written authorization for ***us*** to obtain: medical bills; medical records; wage, salary, and employment information; and any other information [State Farm] deem[s] necessary to substantiate the claim."  (ECF No. 29-13 at 2 (emphasis in original).)

The evidence shows that Wallace signed her medical release authorization on April 8, 2021.  (ECF No. 30-8 at 3.)  State Farm states that it used the medical authorization to request records from providers beginning in May 2021.  (ECF No. 31-1 at 8.)  State Farm's Team Manager Stephanie Norton states in her affidavit that as early

11

as July 20, 2021 it advised Wallace that it had outstanding questions regarding the medical evidence and had requested records from her medical providers.  (ECF No. 28-1 at 1.)  While Wallace argues that State Farm's conduct in obtaining medical records demonstrates unreasonable delay under Colorado law, she cites no case law supporting her argument.  (ECF No. 29 at 10.)

Wallace also argues that State Farm "failed to use two important investigative tools available to it under its own insurance contract, namely and [sic] independent medical examination and an examination under oath."  (*Id.*)  Wallace cites no case law demonstrating that an insurer's decision not to conduct an independent medical examination or examination under oath is unreasonable under Colorado's bad faith statutes.  (*See generally id.*)  Further, she does not identify evidence of any industry standard or contract provision that requires State Farm to conduct either type of examination.  (*See generally id.*)

Finally, Wallace argues that State Farm did not sufficiently explain its evaluation to her.  (ECF No. 29 at 11.)  She cites no case law and identifies no industry standard requiring "an exhaustive description" of the evaluation.  (ECF No. 31-1 at 8.)  Notwithstanding the fact that Wallace has pointed to no evidence of any unreasonable delay or failure to respond to her requests for additional explanation, the Court also finds that State Farm did sufficiently explain its evaluation to Wallace in two—possibly three—letters.  On August 23, 2021 and October 1, 2021, State Farm sent letters to Wallace's attorney explaining the evaluation.  (ECF Nos. 30-2, 30-3.)  While Wallace and State Farm dispute whether State Farm sent and Wallace received yet a third letter, dated October 29, 2021, explaining the evaluation, this factual dispute does not raise a

genuine issue of material fact sufficient to withstand the Motion.  As State Farm argues, and the Court agrees, Wallace has not provided evidence that State Farm had a duty to prepare an explanation letter in the level of detail reflected in the October 29, 2021 letter.  (ECF No. 31-1 at 9.)  The other two letters provided adequate detail explaining the denial of Wallace's benefits.

"Unreasonable conduct cannot be established by virtue of a mere disagreement of value between the insured and insurer."  *Yale Condos. Homeowner's Ass'n, Inc. v. Am. Fam. Mut. Ins. Co., S.I.*, 2021 WL 1222518, at *7 (D. Colo. Apr. 1, 2021).  The Court concludes that although Wallace raises myriad issues, they are attorney arguments, not evidence of bad faith.  She has also failed to demonstrate that State Farm knew or recklessly disregarded the validity of her claim.  She merely disagrees with the evaluation, which is insufficient to create a triable bad faith claim.  *The Green Earth Wellness Center v. Atain Specialty Ins. Co.*, 163 F. Supp. 3d 821, 836 (D. Colo. 2016) ("were the Court to hold that a mere disagreement between parties as to the valuation of a claim created a triable bad faith claim, essentially *every* insurance dispute would proceed to trial on such a claim, as disputes between the insurer and insured over the proper valuation of the loss are routine").

Accordingly, the Court grants summary judgment in favor of State Farm and against Wallace on both of Wallace's bad faith claims.

## V.     FINAL THOUGHTS

In her response, Wallace concedes that her medical bills are approximately $30,000.  (ECF No. 29 at 3.)  Moreover, it is undisputed that she received $25,000 from the liability insurer.  (ECF No. 28 at 2 ¶ 5; ECF No. 29 at 2 ¶ 5.)

Given the nominal amount of damages at issue in the case, the Court has every expectation the parties will successfully resolve this matter before trial. Proceeding to a five-day jury trial in federal court to resolve this minimal (in terms of amount in controversy) dispute would be a colossal misuse of the Court's limited resources, not to mention the significant time and expense such an undertaking would require of the parties in order to take such a minor dispute to trial.

## VI. CONCLUSION

Accordingly, for the reasons stated, the Court ORDERS as follows:

1. Defendant State Farm Mutual Automobile Insurance Company's Motion for Partial Summary Judgment on Plaintiff Kathleen Wallace's Second and Third Claims for Relief (ECF No. 28) is GRANTED;

2. Defendant State Farm Mutual Automobile Insurance Company will be entitled to judgment in its favor and against Plaintiff Kathleen Wallace on Claim 2 (statutory bad faith) and Claim 3 (common law bad faith) at such time as the Clerk enters final judgment on all claims of all parties in this action; and

3. This case remains SET for a Final Trial Preparation Conference on April 19, 2024 and a five-day jury trial to begin on May 6, 2024 (ECF No. 35).

Dated this 20th day of October, 2023.

BY THE COURT:

_____
William J. Martinez
Senior United States District Judge